# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| EMMA CEDER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>SECURITAS SECURITY SERVICES )<br>USA, INC., )<br>)<br>Defendant. ) | Docket No. 1:17-CV-00422-NT |

**ORDER ON DEFENDANT'S MOTION TO COMPEL ARBITRATION**

Plaintiff Emma Ceder brings this sex discrimination action against her former employer, Securitas Security Services USA, Inc. ("**Securitas**"). Securitas has moved to compel arbitration pursuant to the parties' agreement to arbitrate disputes arising out of the employment relationship. Def.'s Mot. 1 (ECF No. 8). For the reasons that follow, the Defendant's motion is **GRANTED**.

**FACTUAL BACKGROUND**

Ceder was employed by Securitas as a security officer from October 3, 2014 through July 29, 2016. Kirby Decl. ¶ 3 (ECF No. 10). She alleges that while on the job, she was sexually harassed, subject to discrimination because of her gender, and retaliated against for complaining about and opposing this conduct, all in violation of the Maine Human Rights Act. Compl. ¶¶ 23-38 (ECF No. 1).

On her first day of work, Ceder signed a Dispute Resolution Agreement Acknowledgment (the "**Acknowledgment**"). Acknowledgment, Kirby Decl. Ex. B (ECF No. 8-3). The Acknowledgment states that

> I have received a copy of the Securitas Security Services USA, INC. (the "Company") Dispute Resolution Agreement (the "Agreement") and I have read and I understand all of the terms contained in the Agreement. I understand that employment or continued employment at the Company constitutes acceptance of this Agreement and its terms. I further acknowledge that the Company and I are mutually bound by this Agreement and its terms.

Acknowledgment. The Acknowledgement was also signed by a representative of Securitas, Linda Bowe. Acknowledgment.

That day Ceder also received a copy of, but did not sign, the Securitas USA Dispute Resolution Agreement (the "**Agreement**"). Kirby Decl. ¶ 4 (ECF No. 10); Bowe Decl. ¶ 4 (ECF No. 14-1); Agreement, Kirby Decl. Ex. A (ECF No. 8-2).[1] The Agreement states in pertinent part that it

> applies to any dispute arising out of or related to Employee's employment with Securitas . . . or termination of employment. . . . **[T]his agreement requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial.** Such disputes include without limitation disputes arising out of or relating to interpretation or application of this Agreement, but not as to the enforceability, revocability or validity of the Agreement or any portion of the Agreement. The Agreement also applies, without limitation, to . . . claims arising under the . . . Civil Rights Act of 1964 . . . and state statutes, if any, addressing the same or

---

[1] The Plaintiff challenges the foundation of Mr. Kirby's statement in his declaration that Ms. Ceder received the Agreement. Pl.'s Opp'n 6 n.1 (ECF No. 13). Mr. Kirby is Securitas's Maine Human Resources Manager. Kirby Decl. ¶ 1. He did not conduct new employee orientation on October 3, 2014; his statement appears to be based on his familiarity with personnel and business records. *Id.* ¶ 2. Ceder says that she signed "many documents" on October 3, but does "not recall" if she has ever seen the Agreement. Ceder Decl. ¶ 2 (ECF No. 13-1). With its Reply, the Defendant submitted the declaration of Linda Bowe, the Securitas employee who did conduct orientation on October 3, which states that she gave a copy of the Agreement to Ceder. Bowe Decl. ¶ 4. Because Ceder does not in fact dispute that she received the Agreement, but only avers that she cannot remember whether she received it, and because the Defendant has produced a signed acknowledgment of Ceder's receipt of the Agreement dated October 3, 2014, on this record, I find that Ceder did receive the Agreement on October 3, 2014.

2

similar subject matters, and all other state statutory and common law claims.

Agreement ¶ 1 (emphasis in original).

## LEGAL STANDARD

The Federal Arbitration Act (the "**FAA**" or the "**Act**") provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. It also provides for the stay of suits already in federal court pending arbitration. *Id.* § 3.

Federal courts will grant a motion to stay a case and compel arbitration pursuant to the FAA when "(i) there exists a written agreement to arbitrate, (ii) the dispute falls within the scope of that arbitration agreement, and (iii) the party seeking an arbitral forum has not waived its right to arbitration." *Combined Energies v. CCI, Inc.*, 514 F.3d 168, 171 (1st Cir. 2008) (quoting *Bangor Hydro-Elec. Co. v. New England Tel. & Tel. Co.*, 62 F. Supp. 2d 152, 155 (D. Me. 1999)).

## DISCUSSION

The Plaintiff challenges the validity and scope of the arbitration agreement.

**A. Whether There Is a Written Agreement to Arbitrate**

Section 2 of the FAA provides that a written provision to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "When deciding whether the parties agreed under the FAA to arbitrate a certain matter, courts 'generally . . . should apply

3

ordinary state-law principles that govern the formation of contracts.'" *Awuah v. Coverall N. Am., Inc.*, 703 F.3d 36, 42 (1st Cir. 2012) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (alteration in original)).

Under Section 2 of the FAA,

> state law may be applied 'if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.' Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2. Courts may not, however, invalidate arbitration agreements under state laws applicable only to arbitration provisions.

*Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 686-87 (1996) (citations omitted) (quoting *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987)).

In Maine, "[a] contract exists when the parties 'mutually assent to be bound by all its material terms, the assent is either expressly or impliedly manifested in the contract, and the contract is sufficiently definite.'" *McClare v. Rocha*, 86 A.3d 22, 28 (Me. 2014) (citation omitted). "Under contract law, a party may make a promise asking for performance, rather than a reciprocal promise, as consideration. If the other party executes performance, a unilateral contract arises. The exchange of promise for performance constitutes the requisite manifestation of mutual assent." *Snow v. BE & K Const. Co.*, 126 F. Supp. 2d 5, 13 (D. Me. 2001) (citations omitted).

On her first day of work, Ceder was given a copy of the Agreement with the relevant terms. She signed the Acknowledgment that states that continued employment at Securitas "constitutes acceptance" of the Agreement. By signing the Acknowledgment, Ceder and Securitas became "mutually bound by this Agreement and its terms." The Agreement and Acknowledgement thus reflect a written

4

agreement to arbitrate, under either a unilateral or bilateral theory of contract formation. Despite her argument to the contrary, Pl.'s Opp'n 2 (ECF No. 13), it is irrelevant that Ceder signed the Acknowledgment as opposed to the Agreement itself, as this Court has recognized. *See Baker v. Securitas Sec. Servs. USA, Inc.*, 432 F. Supp. 2d 120, 124 (D. Me. 2006) (finding a written agreement to arbitrate on a record of Securitas's Agreement and a signed Acknowledgment). Under ordinary contract law principles, someone who signs a contract can be bound regardless of whether she remembers reading it. *Cf. Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1, 21 n.17 (1st Cir. 1999) ("If [the defendant] had provided the [terms of the agreement] to [the plaintiff] but she did not read them, that would not save her.").

The Plaintiff raises two other challenges to the enforceability of the written agreement. She asserts that (i) the Acknowledgment is illusory; and (ii) she did not make a "knowing and voluntary" decision to waive her right to judicial remedies and consent to arbitration. Pl.'s Opp'n 2-7.

Ceder argues that the Acknowledgment is illusory because Securitas "retained the unfettered right to modify the agreements." Pl.'s Opp'n 3. This is an argument that the written agreement was not supported by consideration and is thus unenforceable. *See Snow*, 126 F. Supp. 2d at 13 (citing *Whitten v. Greeley-Shaw*, 520 A.2d 1307, 1309 (Me. 1987)). "[W]here the employer reserves the right to make unilateral changes in an employee contract without giving the employee an opportunity to decide whether to accept those new terms by continuing employment, courts have generally concluded that the incorporated arbitration agreement is illusory and unenforceable." *Canales v. Univ. of Phoenix, Inc.*, 854 F. Supp. 2d 119,

5

124-25 (D. Me. 2012). The problem for Ceder is that the document which Securitas retain[ed] the right to revise at any time is the Employee Handbook, not the Dispute Resolution Agreement. The Employee Handbook Acknowledgment says that Securitas "may . . . revise any of the provisions of this Handbook . . . at any time." Kirby Decl. Ex. B. The Dispute Resolution Agreement Acknowledgment, contained on the same page, says no such thing. Rather, it says that both parties "are mutually bound by this Agreement and its terms." Kirby Decl. Ex. B. This is sufficient consideration to support enforcement. *Canales*, 854 F. Supp. 2d at 126 ("[C]onsideration can take the form of a mutuality of promises to arbitrate."). This case is thus unlike *Canales* or another case cited by the Plaintiff, *Arredondo v. 24 hour Fitness USA Inc.*, No. 07-cv-232, 2007 U.S. Dist. LEXIS 59259 (D. Hawaii Aug. 13, 2007), where the arbitration provision was part of a document the employer could unilaterally modify.

Citing *Rosenberg*, Ceder next argues that an "employee must make a 'knowing and voluntary' decision to waive her judicial rights and consent to arbitration." Pl.'s Opp'n 5. There is no such blanket requirement for agreements to arbitrate statutory antidiscrimination claims. True, it is "commonplace that waivers of certain rights, particularly substantive rights, are enforceable only if they are knowing and voluntary." *Rosenberg*, 170 F.3d at 18.[2] Since *Rosenberg*, the Supreme Court has

---

[2] In *Rosenberg*, which affirmed the denial of a motion to compel arbitration, the First Circuit actually found it unnecessary to decide whether a waiver of a judicial remedy had to be knowing and voluntary. Rosenberg had signed an agreement to arbitrate according to the rules of the New York Stock Exchange, but her employer never provided her with a copy of those rules. The NYSE rules provided that arbitration was required for any controversy arising out of the employment relationship. The First Circuit found that arbitration was not "appropriate" under the 1991 Civil Rights Act, because the employer had not demonstrated that it had provided the plaintiff with a copy of the rules and

6

made clear that the right to a judicial forum is not one of the non-waivable substantive rights protected by federal antidiscrimination laws. *See 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 256 n.5, 265-66 (2009) (noting that "[t]he right to a judicial forum is not the nonwaivable 'substantive' right protected by the ADEA" and repudiating dicta in *Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974), to the contrary); *see also id.* at 259 n.6 (same as to the 1991 Civil Rights Act). The Court "has been quite specific in holding that arbitration agreements can be enforced under the FAA without contravening the policies of congressional enactments giving employees specific protection against discrimination prohibited by federal law." *Id.* at 266 (quoting *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123 (2001)).[3]

Ceder's agreement to arbitrate her Maine Human Rights Act claims did not require her knowing and voluntary consent. It required only her assent to be bound, which, as a matter of Maine contract law, she gave. "[H]aving made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue."

---

because it falsely certified that it had. *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1, 18-20 (1st Cir. 1999). In contrast, here the Plaintiff signed an Acknowledgment that she received a copy of the Agreement, the record suggests she actually did receive the Agreement, and the Agreement contained clear notice that she was required to arbitrate claims arising under the Civil Rights Act of 1964 or its state law equivalents. Agreement ¶ 1.

[3] Both *Gardner-Denver* and *Pyett* involved collective bargaining agreements and not individual employment contracts, but "[n]othing in the law suggests a distinction between the status of arbitration agreements signed by an individual employee and those agreed to by a union representative. This Court has required only that an agreement to arbitrate statutory antidiscrimination claims be 'explicitly stated' in the collective-bargaining agreement." *Pyett*, 556 U.S. at 258 (quoting *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 80 (1998)). The "explicitly stated" requirement applies only to waivers in collective-bargaining agreements. *See Wright*, 525 U.S. at 80-81 ("Gilmer involved an individual's waiver of his own rights, rather than a union's waiver of the rights of represented employees and hence the 'clear and unmistakable' standard was not applicable.").

*Pyett*, 556 U.S. at 258 (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991)). The FAA "requires courts to enforce agreements to arbitrate according to their terms. . . . even when the claims at issue are federal statutory claims, unless the FAA's mandate has been 'overridden by a contrary congressional command.'" *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012) (citations omitted). The Plaintiff has pointed to no "contrary congressional command" precluding a waiver of a judicial remedy for her Maine Human Rights Act claims. Even if the Maine Legislature (as opposed to Congress) could preclude such a waiver,[4] the Plaintiff has cited no language from the Maine Human Rights Act showing that it did. There is a valid written agreement to arbitrate.

**B. Whether the Dispute Falls Within the Scope of the Agreement**

"All doubts concerning the scope of arbitrable issues are resolved in favor of arbitration." *Maine Sch. Admin. Dist. No. 68 v. Johnson Controls, Inc.*, 222 F. Supp. 2d 50, 53 (D. Me. 2002) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)). "However, 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Id.* (citations omitted).

By its terms, the Agreement here applies "to disputes regarding the employment relationship . . . and claims arising under the . . . Civil Rights Act of 1964

---

[4] The FAA "withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984); *accord Preston v. Ferrer*, 552 U.S. 346, 353-56 (2008). "Thus, even where the relevant state law at issue expressly precludes waiver of the judicial forum, if the parties have nevertheless executed a binding arbitration agreement, the Supremacy Clause requires that the Arbitration Act supercede the state law non-waiver provision, and that arbitration be compelled." *Steck v. Smith Barney, Harris Upham & Co.*, 661 F. Supp. 543, 547 (D.N.J. 1987).

. . . and state statues, if any, addressing the same or similar subject matters, and all other state statutory and common law claims." Agreement ¶ 1. The Plaintiff's sex discrimination claims under the Maine Human Rights Act plainly fall within the scope of the Agreement.

The Plaintiff nevertheless asserts that the Agreement does not provide "clear and unmistakable" evidence of an agreement to arbitrate all claims, Pl.'s Opp'n 7, and that under *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995), the motion to compel should be denied absent such evidence. The Plaintiff is correct that there is no evidence of an agreement to arbitrate *all* claims, but that is irrelevant and does not implicate *First Options*. *First Options* says that courts "should not assume that the parties agreed to arbitrate *arbitrability* unless there is 'clear and unmistakable' evidence that they did so.*" Id.* at 944 (emphasis added) (citations omitted). It does *not* say that courts should "not assume that the parties agreed to *arbitrate*," Pl.'s Opp'n 7 (emphasis added) absent such evidence. *First Options* differentiated between three questions present in every litigation over arbitration. First, there are the merits—whether Securitas discriminated against Ceder. Second, there is the question *whether the parties agreed to arbitrate* the merits—usually known as arbitrability. Third, there is the question of *who decides* the second question, an arbitrator or a court. *First Options*, 514 U.S. at 942. The second and third questions are subject to different legal standards.

"[T]he law treats silence or ambiguity about the question 'who (primarily) should decide arbitrability' differently from the way it treats silence or ambiguity about the question 'whether a particular merits-related dispute is arbitrable because

9

it is within the scope of a valid arbitration agreement'—for in respect to this latter question the law reverses the presumption." *First Options*, 514 U.S. at 944-45 (citations omitted). That is, there must be clear and unmistakable evidence that the parties agreed *to have an arbitrator decide* what they agreed to arbitrate—the third question. No such evidence is required when a court is deciding *whether* a particular dispute is within the scope of the parties' arbitration agreement—the second question, which is covered by the broad federal presumption in favor of arbitrability.

In *First Options*, the petitioner lacked clear and unmistakable evidence showing that the parties agreed to have an arbitrator decide the question of arbitrability. *Id.* at 946. So too in the other case Ceder cites, *Morris v. Regis Corp*, No. 08-68-P-H, 2008 U.S. Dist. LEXIS 67322 (D. Me. Sept. 2, 2008), where the court therefore denied a motion to compel arbitration of that narrow question. *Id.*

Here, by contrast, the issue is *whether* the parties agreed to arbitrate the Plaintiff's claims, not *who should decide* whether they agreed to arbitrate those claims. In any case, there is no silence nor ambiguity in the Agreement about either question. Securitas has sought to have a federal court decide the arbitrability question pursuant to the Agreement, which affirmatively excludes arbitrability questions from arbitration. Agreement ¶ 1 (arbitrable disputes "include without limitation disputes arising out of or relating to interpretation or application of this Agreement, but not as to the enforceability, revocability or validity of the Agreement or any portion of the Agreement"). *First Options* and *Morris* are thus inapposite.[5] And

---

[5] So is *Wright*, which as noted *supra* requires a waiver of a judicial forum for statutory rights to be "clear and unmistakable" *in a collective-bargaining agreement*, but not in an individual employment contract. 525 U.S. at 79-81.

as already noted, the second question is easily answered: the Plaintiff's claims are within the scope of the Agreement.

**C. Whether Securitas Has Waived Its Right to Arbitration**

The Plaintiff does not argue that Securitas has waived its right to arbitration, and there is no basis in the record for so concluding.

**D. Dismiss or Stay**

Having concluded that all of Ceder's claims against Securitas are arbitrable, the remaining question is whether to dismiss or stay the action. The Defendant has requested dismissal and a stay in the alternative. Def.'s Mot. 9. In the First Circuit, federal courts have discretion to either dismiss or stay when all the issues before the court are arbitrable. *Baker*, 432 F. Supp. 2d at 127 (citing *Bercovitch v. Baldwin Sch., Inc.*, 133 F.3d 141, 156 n.21 (1st Cir. 1998)). *But see Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015) (concluding the FAA requires a stay and noting a circuit split on the issue).

The advantages of dismissal are well established: "Any post-arbitration remedies sought by the parties will not entail renewed consideration and adjudication of the merits of the controversy but would be circumscribed to a judicial review of the arbitrator's award in the limited manner provided by law. This course of action will also make the arbitrability issue immediately appealable and will avoid the litigation expenses and delay if the arbitration conducted were vacated by a later appeal." *Baker*, 432 F. Supp. 2d at 127 (quoting *Boulet v. Bangor Sec. Inc.*, 324 F. Supp. 2d 120, 127 (D. Me. 2004)).

In light of the foregoing, I conclude that dismissal is appropriate.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** the Defendant's motion to compel arbitration. The case is **DISMISSED**.

SO ORDERED.

/s/ Nancy Torresen<br>United States Chief District Judge

Dated this 14th day of May, 2018.